UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

NATIONAL ORGANIZATION FOR MARRIAGE,  :
INC.,
                                        :  **AFFIDAVIT OF**

                  Plaintiff,       :  **RICHARD BRIFFAULT**
                                          :

                v.                     :

                                          :  Case No.: 10-CV-751

JAMES WALSH, in his official capacity as co-chair  :
of the New York State Board of Elections;              :
DOUGLAS KELLNER, in his official capacity as co- :
chair of the New York State Board of Elections;
EVELYN AQUILA, in her official capacity as
commissioner of the New York State Board of
Elections; and GREGORY PETERSON, in his
official capacity as commissioner of the New York
State Board of Elections,

                          Defendants.

---------------------------------------------------------------

STATE OF NEW YORK    )
                        )ss.:
COUNTY OF NEW YORK  )

        RICHARD BRIFFAULT, being duly sworn, deposes and says:

        1.     I am an attorney admitted to the Bar of the State of New York.  I am the

Joseph P. Chamberlain Professor of Legislation at the Columbia University School of Law, with

an office at 435 West 116th Street, New York, NY 10027.

        2.     Much of my teaching, research, and writing deals with the legal regulation

of the political process, particularly campaign finance regulation.  I have published two dozen

law review articles and chapters in edited volumes dealing with campaign finance law.  I was the

executive director of the Commission on Campaign Finance Reform of the Association of the

Bar of the City of New York, and principal author of its report, "Dollars and Democracy: A

Blueprint for Campaign Finance Reform" (Fordham University Press 2000).  I have testified on

campaign finance law issues before committees of the United States House of Representatives and the City Council of the City of New York.  My campaign finance work has been cited by the United States Supreme Court (see Federal Election Commission v. Colorado Republican Federal Campaign Committee, 533 U.S. 431, 462-63 (2001); Nixon v. Shrink Missouri Government PAC, 528 U.S. 377, 406 (2000)) and by the United States Court of Appeals for the District of Columbia Circuit (see Emily's List v. Federal Election Commission, 581 F.3d 1, 10, passim (D.C. Cir. 2009)).

3.      In my work, I have given considerable attention to federal and state laws regulating electorally active organizations in order to promote greater public awareness of the activities of these organizations and of their financial backers.  These laws typically require such organizations to periodically disclose their electioneering expenditures above a certain threshold level and the names of the donors who provide them with the funds to make such expenditures. Such disclosure serves several significant public interests.

4.      First, it gives the voters valuable information about the sources and uses of campaign money.  When an organization supports a candidate, disclosure of the identities of the organization's principal financial backers "increases the fund of information concerning those who support candidates."  Buckley v. Valeo, 424 U.S. 1, 81 (1976).  Even when the organization is acting independently of any candidate, the "informational interest" remains "strong" because "disclosure helps voters to define more of the candidates' constituencies."  Id.  It also gives the voters a sense of the individuals, organizations, or interest groups to whom the candidate may feel grateful or obligated if he or she wins the election.

5.      Second, disclosure gives the voters a context for understanding the meaning and purpose of campaign messages.  Criticism of a particular candidate may mean one

thing coming from one source, and something very different from a different source. "The public has an interest in knowing who is speaking about a candidate shortly before an election." Citizens United v. Federal Election Commission, 130 S.Ct. 876, 915 (2010). Many organizations employ non-descriptive names – such as "American Future Fund" or "Americans for Prosperity" – or even deceptive names. Disclosure of the names of an organization's donors can provide a better understanding of what the organization is about and therefore how to analyze its messages.

6.      Third, such disclosure can also protect the interests of donors to these organizations. Many politically active organizations may combine legislative lobbying, voter education, public advocacy, and electioneering activities. Donors to an organization will support its general views on issues like the environment, taxation, or marriage, but not necessarily its views on specific candidates. Reporting and disclosure inform the donors as well as the public as to how their money is being used.

7.      Fourth, disclosure also supports the general public interest in transparency and thereby promotes public confidence in the electoral process. In part, this is because disclosure can help regulators detect violations of election laws, such as those involving coordination between ostensibly independent organizations and candidates or political parties; or the acceptance of funds from prohibited sources, such as foreign donors. More generally, disclosure responds to public concerns about behind-the-scenes manipulation of the electoral process.

8.      Since the Citizens United decision, public concern about the role of "secret donors" and "stealth contributors" has reached new heights. Indeed, the lack of adequate disclosure of the contributors to electorally active nonprofit advocacy organizations dominates

3

media treatment of campaign finance issues in the current election cycle. By enabling corporations and unions to spend without limit, <u>Citizens United</u> enables individual donors who would be subject to disclosure if they engaged in independent expenditures directly, to route their money through organizations with anodyne names.

9.      Spending through such organizations allows donors to avoid disclosure of their electoral role and of the amount of funds they are devoting to supporting or opposing particular candidates. This also deprives the public of an understanding of who are the candidate's backers.

10.      Although <u>Citizens United</u> vindicates the right to engage in independent spending, it also confirms that there is an important public interest in requiring those who undertake independent spending to disclose their activities and the identities of their financial supporters.

11.      The New York Election Law provisions under attack in this case, including the definition of "political committee" in Section 14-100(1), are central elements of New York's reporting and disclosure rules for state elections. The principal reason for determining that an organization is a "political committee" under the Election Law is to require it to abide by the registration, organization, record-keeping, and reporting requirements that are essential for effective disclosure.

12.      The requirement that a committee designate a treasurer (<u>see</u> Election Law § 14-118(1)), for example, is necessary to assure that there is a committee official responsible for keeping the records essential for reporting and disclosure. The record-keeping and reporting requirements (<u>see</u> <u>id.</u> §§ 14-102, 14-108, 14-122) serve the same function.

13.     Although Plaintiff National Organization for Marriage ("NOM") claims to be attacking only the definition of a "political committee," in so doing it is attacking the requirement that it be required to disclose its expenditures in New York elections and the donors who finance those expenditures.  If NOM succeeds and then undertakes the campaign advertising it describes above the monetary threshold that would otherwise trigger disclosure, New York voters will be denied important information concerning who is seeking to influence their votes, as well as who may be using such expenditures to win the gratitude of elected officials.

14.     The radio and television transcripts attached to the Complaint demonstrate precisely why it is appropriate to ask NOM to report its expenditures and disclose its financial backers above a threshold level.  Although each advertisement begins with general advocacy about the question of same-sex marriage, each advertisement also includes the name of a current candidate, and only the name of a candidate.  More importantly, each advertisement includes in its final sentence the critical phrase, "as the election approaches," thereby signaling that the ad is intended to affect listener votes in the upcoming election.

15.     In Federal Election Commission v. Wisconsin Right to Life, Inc. ("WRTL"), 551 U.S. 449, 470 (2007), Chief Justice Roberts wrote that one of the factors that helps determine whether ads engage in electoral advocacy is whether they "mention an election." All of NOM's ads mention an election.

16.     The NOM Issue Mailer attached as Exhibit 6 to the Complaint evinces an even stronger electoral purpose.  Like the radio and TV ads, it, too, includes the "as the election approaches" phrase.  More strikingly, the mailer says relatively little about NOM's asserted issue concern, same-sex marriage.  Instead it initially praises Legislator Y for four attributes, including being "an effective fiscal conservative," "a tireless taxpayer advocate," and "a dedicated

5

community volunteer." It then says the legislator deserves thanks for his or her efforts against

same-sex marriage – NOM's issue – but joins that with praise for legislator Y's work as "an

effective fiscal conservative" and as "a tireless champion for lower taxes and more government

accountability." Again, Chief Justice Roberts noted that ads will not be treated as electioneering

when "they do not take a position on a candidate's character, qualifications, or fitness for office."

WRTL, 551 U.S. at 470. But NOM's mailers are far more focused on candidate character and

qualifications than on NOM's nominal issue.

17.     In Citizens United, the Supreme Court confirmed that reporting and

disclosure requirements need not be limited to the functional equivalent of express advocacy but

can be extended more broadly to include broadcast communications that name clearly identified

candidates in the sixty days before an election. 130 S.Ct. at 915. Under Citizens United, there

should be no constitutional difficulty with requiring NOM to report its expenditures for the

proposed broadcast ads, and the donors who are paying for the ads.

18.     It is now less than three weeks before Election Day. Generally, the eve of

an election is a poor time to rewrite longstanding and generally applicable rules which have been

accepted by all other campaign participants. NOM is a large, well-financed organization, which

has been electorally active in a number of states for at least the last three elections, and has

challenged the election laws of at least one other state. See National Organization for Marriage,

Inc. v. McKee, ___ F.Supp.2d ___, 2010 WL 3270092 (D. Me. 2010). It is capable of

complying with the Election Law. Moreover, it plans to engage in electioneering

communications that may be subject to reporting and disclosure requirements.

19.     The New York Election Law sections at issue address the important public

interest in assuring adequate disclosure of contributions and spending intended to influence

6

elections.  NOM's planned campaign activity may trigger reporting and disclosure requirements.

NOM does raise questions concerning the terms and scope of the Election Law which are

appropriate for judicial review after a full hearing on the merits of its claim. But, in my

professional opinion, given the nature of the issues and the public interest at stake this is clearly

not an appropriate case for preliminary relief.

_____

Richard Briffault

Sworn to before me on this
13th day of October, 2010.

_____
Notary Public

Doc # 01-2404439.1

DEAN M. LANCE
Notary Public, State of New York
No. 01LA6154755
Qualified in New York County
Commission Expires Oct. 23, 2010

7