UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NATIONAL ORGANIZATION FOR
  MARRIAGE, INC. ,

                    Plaintiff,

      v.

**DECISION AND ORDER**
10-CV-751A

JAMES WALSH in his official capacity as
  co-chair of the New York State
  Board of Elections et al.,

                    Defendants.

I.    **INTRODUCTION**

Pending before the Court are motions by plaintiff National Organization for Marriage, Inc. for a preliminary injunction (Dkt. Nos. 2, 48) under Rule 65 of the Federal Rules of Civil Procedure ("FRCP") and for consolidation under FRCP 65(a)(2); and a motion to dismiss under FRCP 12 by all four named defendants in this case, who are sued in their official capacities as co-chairs or commissioners of the New York State Board of Elections ("BOE"). Either by injunction or, in the alternative, by declaratory judgment, plaintiff seeks to prevent defendants from classifying it as a "political committee" as that term is defined in Section 14-100(1) of New York's Election Law. Plaintiff seeks to avoid political committee status because such a classification would trigger various disclosure and reporting

requirements elsewhere in Article 14 of the Election Law that, it believes, are unconstitutional facially and as applied to it. Defendants seek dismissal on the grounds that plaintiff's claims are not ripe for review and that plaintiff's pleadings are too conclusory in nature to set forth sufficiently detailed factual allegations. The Court held oral argument on October 21, 2010. For the reasons below, the Court will grant defendants' motion in part, dismiss plaintiff's amended complaint for lack of subject-matter jurisdiction, and deny plaintiff's motions as moot.

## II.  BACKGROUND

This case concerns plaintiff's desire to engage in advertisements and direct mailings in New York concerning the issue of same-sex marriage. According to plaintiff's amended complaint,[1] plaintiff is a tax-exempt 501(c)(4) organization founded in 2007 under the Virginia Nonstock Corporation Act. Among other purposes, plaintiff was incorporated "[t]o promote the importance of preserving marriage as the union of one husband and one wife [and to] advocate for policies that will preserve the historic definition of marriage and the natural family that springs therefrom, as well as the rights of the faith traditions that support and sustain the foregoing." (Dkt. No. 45-7 at 1.) Consistent with its corporate

---

[1] On October 18, 2010, plaintiff filed an amended complaint and an amended motion for a preliminary injunction (Dkt. Nos. 45, 48). The Court accepts the amended complaint as a superseding pleading under FRCP 15(a)(1)(B). The Court accepts the amended motion papers because the Court's grounds for dismissal do not implicate defendants' lack of an opportunity to respond.

2

purpose, plaintiff seeks to engage in radio and television advertisements, direct mail, and publicly accessible Internet postings of its advertisements and mailings in New York prior to the November 2010 election. The amended complaint includes transcripts of the proposed advertisements, which would conclude with a request that the reader or viewer vote for New York gubernatorial candidate Carl Paladino. The amended complaint also includes a proposed postcard mailing that would thank selected state legislators by name for, *inter alia*, having "fought to stop gay marriage in the Legislature." (Dkt. No. 45-6 at 2.)

Plaintiff commenced this case and filed its pending motions on September 16, 2010 out of concern about the impact that Article 14 of New York's Election Law would have on it. Specifically, plaintiff is concerned that defendants or BOE as an entity would classify it as a political committee under New York Election Law § 14-100(1). The definition of "political committee" in Section 14-100(1) reads in relevant part as follows:

> "[P]olitical committee" means any corporation aiding or promoting and any committee, political club or combination of one or more persons operating or co-operating to aid or to promote the success or defeat of a political party or principle, or of any ballot proposal; or to aid or take part in the election or defeat of a candidate for public office or to aid or take part in the election or defeat of a candidate for nomination at a primary election or convention, including all proceedings prior to such primary election, or of a candidate for any party position voted for at a primary election, or to aid or defeat the nomination by petition of an independent candidate for public office; but nothing in this article shall apply to any committee or organization for the discussion or advancement of political questions or principles without connection with any vote or to a national committee

> organized for the election of presidential or vice-presidential candidates.

N.Y. Elec. Law § 14-100(1) (Westlaw 2010).

Plaintiff "reasonably fears it is a political committee under New York law, N. Y. ELECTION LAW § 14-100.1 (1988), since its speech is express advocacy" (Dkt. No. 45 at 5 ¶ 18) and because that status would trigger several reporting and disclosure requirements found in several other provisions of Article 14 of the Election Law. The reporting and disclosure requirements in question include the periodic filing of sworn statements disclosing the amount of any donation received and the identity of the donor (Elec. Law §§ 14-102, 14-108); the inclusion, with any filed sworn statements, of copies of advertisements purchased (*id.* § 14-106); the designation of a treasurer and the filing of the treasurer's contact information with BOE (*id.* § 14-118); and the accounting of any contribution to the treasurer within 14 days of receipt (*id.* § 14-122). Plaintiff believes that the burdensome nature of these requirements "is such that the speech would simply not be 'worth it'" (Dkt. No. 45 at 5–6), which means that the requirements would have a chilling effect that is not permitted under the First Amendment.

Plaintiff's motions reduce to whether the definition of "political committee" in Election Law § 14-100(1) unconstitutionally burdens the type of speech that plaintiff seeks to produce in New York. In support of its motions, plaintiff argues

4

that Section 14-100(1) is unconstitutional facially and as applied to it because it would place much greater burdens on its type of speech than the United States Supreme Court has permitted in cases such as *Buckley v. Valeo*, 424 U.S. 1 (1976) and *Citizens United v. FEC*, 558 U.S. ____, 130 S. Ct. 876 (2010). In the alternative, plaintiff seeks a declaratory judgment limiting Section 14-100(1) "to organizations that are under the control of, or have the major purpose of nominating or electing, a candidate or candidates." (Dkt. No. 45 at 8 ¶ 33.) In opposition to plaintiff's motions and in support of their own motion to dismiss, defendants contend that plaintiff lacks standing to bring its claims at this time because it has not stated any real or imminent injury that this Court could adjudicate. Additionally, defendants contend that plaintiff's pleadings are sufficiently lacking in factual detail and sufficiently riddled with conclusory legal assertions that it has failed to state a cognizable claim.

### III. DISCUSSION

#### A. *Jurisdiction and Standing Generally*

As an initial matter, and especially because of defendants' pending motion,[2] this Court must decide if it has jurisdiction over this case. *See United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) ("[I]n our federal system of

---

[2] Technically, defendants seek relief only under FRCP 8(a) and 12(b)(6). (*See* Dkt. No. 25.) The first point in defendants' memorandum of law, however, concerns standing and essentially is a challenge under FRCP 12(b)(1).

limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction. Where jurisdiction is lacking, moreover, dismissal is mandatory.") (internal quotation marks and citations omitted); *see also Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) ("We cannot avoid addressing the threshold question of jurisdiction simply because our finding that federal jurisdiction does not exist threatens to prove burdensome and costly, or because it may undermine an expensive and substantially completed litigation.") (citation omitted). Specifically, this Court must decide whether plaintiff has standing to bring this case, because without standing, plaintiff's claims would amount only to impermissible invitations to offer legal advice. "[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be 'likely,' as opposed to merely 'speculative,'" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations in the original) (internal quotation marks and citations omitted).

### B. *Ripeness and the First Element of Standing*

Upon review of all the submissions from the parties both on papers and at oral argument, the Court's most immediate concern under the first prong of the standing test is whether plaintiff's claims are ripe for review. That is, even if plaintiff might have a cognizable claim against defendants or BOE at some point in time, does it have a cognizable claim *right now*? "The basic rationale of the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Com'n*, 461 U.S. 190, 200–01 (1983) (internal quotation marks and citation omitted). In the context of First Amendment litigation, "[a] plaintiff bringing a pre-enforcement facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has an actual and well-founded fear that the law will be enforced against it." *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000) (internal quotation marks and citation omitted).

The evidence available in the docket so far indicates that plaintiff's fear of an improper classification under Section 14-100(1) is too remote. There is no evidence in the docket suggesting that plaintiff ever communicated with

7

defendants or any other BOE officials at all prior to the commencement of this case. The lack of communication between the parties is critical because "[t]here has been no finding that [plaintiff] is a political committee within the meaning of Election Law § 14-100(1). Until that determination is made, [plaintiff] is under no obligation to disclose the identity of its contributors as required by Election Law § 14-102(1). Further, such identification is not necessary for the purpose of determining whether [plaintiff] is a political committee." *Wallace v. Wiedenbeck*, 674 N.Y.S.2d 230, 231 (App. Div. 4th Dep't 1998). Because plaintiff would not have to make any statutory disclosures until its status under Section 14-100(1) were determined by the state court system, it would have time to avail itself of the judicial proceedings described in Article 16 of the Election Law in the event of a determination with which it disagreed. Additionally, plaintiff has barely acknowledged the second half of Section 14-100(1), which contains the explicit provision that "nothing in this article shall apply to any committee or organization for the discussion or advancement of political questions or principles without connection with any vote or to a national committee organized for the election of presidential or vice-presidential candidates." This provision, which the state Legislature added in response to *N.Y. Civil Liberties Union, Inc. v. Acito*, 459 F. Supp. 75 (S.D.N.Y. 1978), would appear to give plaintiff at least a notable chance of avoiding the disclosure requirements with which it does not wish to comply. Under these circumstances, there is no reason to believe that plaintiff faces

sanctions under Section 14-126 anytime soon, if ever, which means that any substantive analysis that the Court attempted now would be only an academic exercise concerning unripe claims.

The Court thus finds that it lacks subject-matter jurisdiction over this case and will dismiss plaintiff's amended complaint accordingly. Without subject-matter jurisdiction, an examination of any other issues that the parties have raised is neither necessary nor appropriate.

## IV. CONCLUSION

For all of the foregoing reasons, the Court hereby grants defendants' motion to dismiss (Dkt. No. 25) in part under FRCP 12(b)(1) and dismisses plaintiff's amended complaint. The Court denies defendants' motion in all other respects as moot. The Court also denies plaintiff's motion for a preliminary injunction (Dkt. Nos. 2, 48) and motion to consolidate (Dkt. No. 6) as moot.

The Clerk of the Court is directed to close this case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: January 25, 2010